**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| CHRISTIAN HERNANDEZ MORENO, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | 1:17CR202-1<br>1:19CV333 |

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This Court (per United States District Judge William L. Osteen, Jr.) entered a Judgment against Petitioner imposing, inter alia, a prison term of 96 months, upon his guilty plea to possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). (Docket Entry 32; see also Docket Entry 1 (Indictment); Docket Entry 22 (Plea Agreement); Docket Entry 40 (Plea Hrg. Tr.); Docket Entries 41 and 42 (Sent'g Hrg. Tr.).)[1] Petitioner subsequently sent a pro se letter to the Clerk of the United States Court of Appeals for the Fourth Circuit (Docket Entry 34 at 1), which the Fourth Circuit "construed as a notice of appeal" (id. at 3). Ultimately, the Fourth Circuit ruled that Petitioner "failed to file a timely notice of appeal or to obtain an extension of the appeal period, [and] grant[ed] the Government's motion to dismiss [the appeal]." (Docket Entry 43 at 2.) Petitioner then timely filed a Motion under 28 U.S.C. § 2255 to

---

[1] Parenthetical citations refer to Petitioner's criminal case.

Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion"), raising these three claims:

1) "[c]ounsel was ineffective for failure to file notice of appeal as directed" (Docket Entry 46, ¶ 12(Ground One));

2) "[c]ounsel was ineffective for misadvice as to the sentence and failure to advise the virance [sic] sentence" (id., ¶ 12(Ground Two));

3) "[c]ounsel was ineffective for failing to appeal suppression hearing" (id., ¶ 12(Ground Three)).

The United States responded (see Docket Entry 52 ("Response")) and Petitioner replied (see Docket Entry 55 ("Reply")). The Court should deny relief, except as to Petitioner's claim that his counsel provided ineffective assistance by failing to give notice of appeal, as to which claim the Court should grant relief by vacating and then re-entering the Judgment (thereby allowing Petitioner another opportunity to institute a timely appeal).

For Ground One, the Section 2255 Motion offers as its "[s]upporting facts" solely the following: "[Petitioner] entered a plea of guilty to the charges [sic] in the [I]ndictment pursuant to [the P]lea [A]greement. The [P]lea [A]greement was conditional preserving [Petitioner's] right to challenge on appeal the denial of [his] motion to suppress. [Petitioner's c]ounsel dint [sic] file a notice of appeal." (Docket Entry 46, ¶ 12(Ground One)(a).) In other words, although the Section 2255 Motion labels Ground One

2

as a claim for ineffective assistance of counsel "for failure to file notice of appeal <u>as directed</u>" (<u>id.</u>, ¶ 12(Ground One) (emphasis added)), the facts tendered to support that claim do <u>not</u> actually assert that Petitioner ever actually <u>directed</u> his counsel to file a notice of appeal (<u>see</u> <u>id.</u>, ¶ 12(Ground One)(a); <u>see also</u> <u>id.</u>, ¶ 12(c)(7) (explaining that failure to raise Ground One on direct appeal occurred because "[Petitioner's c]ounsel told [Petitioner that Petitioner's counsel] was gonna [sic] appeal after sentencing," (again) without asserting that Petitioner directed his counsel to file notice of appeal)).

The United States, in turn, appended to its Response an affidavit from Petitioner's counsel, who therein declared (under oath), inter alia, that:

A) Petitioner's counsel told Petitioner, after sentencing, that Petitioner's counsel "would not appeal [Petitioner's] sentence [sic] because [Petitioner's counsel] did not believe [an appeal of the denial of the] suppression motion would be successful, and more importantly [Petitioner's counsel] feared that an [a]ppeal may trigger the possibility of a re-evaluation of [Petitioner's] status as an armed career criminal" (Docket Entry 52-1 at 1);

B) "[a]lthough [Petitioner's counsel] advised [Petitioner] against an appeal, [Petitioner's counsel] would have provided [Petitioner] with a [n]otice of [a]ppeal for [Petitioner] to file

3

if [Petitioner] had asked, as [Petitioner's counsel] ha[d] done with other clients in the past" (id. at 1-2); and

C) Petitioner's counsel "d[id] not recall whether or not [Petitioner] specifically requested an [a]ppeal" (id. at 2; see also id. ("In addition, I was not retained for the [a]ppeal.")).

The Reply counters that "Petitioner specifically recalls on September 28, 2017[, i.e., the date of his guilty plea, he] told [his counsel] to file an appeal." (Docket Entry 55 at 2; see also id. ("[Petitioner's counsel] was well aware that Petitioner sought a[ d]irect [a]ppeal.").) Petitioner, however, did not sign the Reply under oath or subject to perjury penalties (see id. at 6) and the "[unverified and] unsworn allegations of [a] reply are not an acceptable form of evidence," Wright v. United States, Nos. 3:04CR3, 3:10CV174, 2011 WL 4852470, at *17 n.7 (S.D. Ohio May 20, 2011) (unpublished), recommendation adopted, 2011 WL 4852495 (S.D. Ohio Oct. 13, 2011) (unpublished). If the record showed nothing more, the Court properly could have denied Ground One as resting on "[u]nsupported, conclusory allegations [which] do not warrant an evidentiary hearing, much less [habeas] relief," Ward v. United States, Nos. l:10CR208, l:13CV168, 2016 WL 1032847, at *4 (M.D.N.C. Mar. 15, 2016) (unpublished) (Osteen, C.J.) (citing Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999)).

4

Upon initial review of this case, the undersigned Magistrate Judge did not identify anything else in the record pertinent to Ground One and therefore (after concluding that Grounds Two and Three also did not appear to warrant collateral relief) placed this case at the end of a (regrettably long) line of cases with motions under Section 2255 due for (recommended) denial as time permitted. When (recently) this case came to the front of that line (admittedly not quickly enough), the undersigned Magistrate Judge discovered (during the drafting process) a Declaration from Petitioner dated July 20, 2019 – just like the Reply (compare Docket Entry 54-1 at 1, with Docket Entry 55 at 6) – but attached to (and docketed with) a different filing Petitioner mailed that same date, i.e., his Motion for Extensions (Docket Entry 54), which (unnecessarily) sought more time for the filing of the Reply (see Text Order dated Jan. 30, 2022 (finding said motion moot)). That Declaration, which Petitioner did verify, "[p]ursuant to 28 U.S.C. [§] 1746, . . . under penalty of perjury . . . [a]s true and correct" (Docket Entry 54-1 at 1), avers that Petitioner "expressly stated that [he] want[ed his counsel] to file a[n] appeal" (id.; see also id. ("I[t] was a direct request.")).

"Once [a federal criminal defendant] unequivocally instruct[s] his attorney to file a timely notice of appeal, his attorney [i]s under an obligation to do so."  United States v. Poindexter, 492 F.3d 263, 269 (4th Cir. 2007); see also Roe v. Flores-Ortega, 528

5

U.S. 470, 477 (2000) ("[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). In light of the material conflict between (1) the above-quoted, verified account from Petitioner that he requested his counsel to file a notice of appeal and (2) the sworn statement by Petitioner's counsel that, although he did not recall whether Petitioner ever requested the filing of a notice of appeal, Petitioner's counsel (consistent with his standard practice) would have facilitated Petitioner's filing of a notice of appeal if Petitioner, in fact, had requested it (see Docket Entry 52-1 at 1-2), the Court normally would need to take testimony from Petitioner and his counsel at an evidentiary hearing to resolve Ground One, see Poindexter, 492 F.3d at 273 ("remand[ing] with instructions to hold an evidentiary hearing to determine whether [the petitioner] unequivocally instructed his attorney to file a notice of appeal"); see also McKiver v. United States, Nos. 1:12CR71, 1:13CV1091, 2015 WL 5130631, at *3 (M.D.N.C. Sept. 1, 2015) (unpublished) (recommending denial of ineffectiveness claim, after evidentiary hearing, because "[t]he Court should credit [the] testimony [of the petitioner's counsel] denying any [] instruction [to appeal] over [the p]etitioner's testimony to the contrary"), recommendation adopted, slip op. (M.D.N.C. Nov. 2, 2015).

6

In this case, however, the Court should take judicial notice that Petitioner's counsel has died.  See ncbar.org/members/news-communications/in-memoriam (posting notice of death of Petitioner's counsel on September 3, 2021) (last visited Jan. 30, 2022).  As such, the United States cannot present competent testimony at a hearing to substantiate a denial that Petitioner "unequivocally instructed his attorney to file a timely notice of appeal," Poindexter, 492 F.3d at 269.  Given that unique circumstance, the Court should deem the failure to file timely notice of appeal "professionally unreasonable," id.  See Matthews v. United States, Crim. No. 03-72, Civ. No. 10-1740, 2013 WL 1674948, at *10 (W.D. Pa. Apr. 17, 2013) (unpublished) ("[T]he court found that [counsel's] performance was deficient . . . by reason of [the] petitioner's testimony which could not be contradicted by [counsel] who had died.").  "Because [that] unprofessional conduct resulted in [Petitioner] losing his appellate proceeding, he has established prejudice . . . ."  Poindexter, 492 F.3d at 269; see also Flores-Ortega, 528 U.S. at 485 ("[A] defendant, by instructing counsel to perfect an appeal, objectively indicate[s] his intent to appeal and [i]s entitled to a new appeal without any further showing.").  The Court therefore should "vacate [Petitioner's J]udgment . . . and enter a new judgment from which an appeal can be taken." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993).

7

That disposition would moot the claim in Ground Three that "[Petitioner's c]ounsel was ineffective for failing to appeal suppression hearing" (Docket Entry 46, ¶ 12(Ground Three)), leaving only Ground Two's claim that "[Petitioner's c]ounsel was ineffective for misadvice as to the sentence and failure to advise the virance [sic] sentence" (id., ¶ 12(Ground Two)). As the "[s]upporting facts" for Ground Two, the Section 2255 Motion baldly asserts that "[Petitioner's] lawyer told [Petitioner that Petitioner] was facing 57-71 month[s] with out [sic] the [18 U.S.C. §] 924(e) inhancement [sic]. [Petitioner's counsel] never told [Petitioner] or let [Petitioner] challeng[e] the virance [sic] sentence. [Petitioner] was never advise[d] that a[n] upper virance [sic] would be imposed." (Id., ¶ 12(Ground Two)(a); see also Docket Entry 54-1 at 1 ("I was not advised that my sentencing range was more than 57-71 months. The range discussed was not referenced by the Court as being 96 months.").)

Those bald assertions conflict with Petitioner's sworn statements at his plea hearing and other indisputable record facts. Accordingly, Ground Two fails as a matter of law, in that Petitioner cannot demonstrate any error or omission "so serious that [his] counsel was not functioning as the 'counsel' guaranteed [Petitioner] by the Sixth Amendment," Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Harrington v. Richter, 562 U.S. 86, 105 (2011) ("Surmounting *Strickland*'s high bar is never an easy

8

task. . . . [T]he standard for judging counsel's representation is a most deferential one." (internal quotation marks omitted)).

To begin, to the extent Ground Two relies on the allegation that Petitioner's counsel "told [Petitioner that he] was facing 57-71 month[s] with out [sic] the [Section] 924(e) inhancement [sic]" (Docket Entry 46, ¶ 12(Ground Two)(a)), the record confirms that Petitioner's counsel accurately forecast Petitioner's advisory guideline range (see Docket Entry 42 at 6-7). Next, to the extent Ground Two relies on the allegation(s) that Petitioner's counsel "never told [Petitioner] or let [him] challeng[e] the virance [sic] sentence" (Docket Entry 46, ¶ 12(Ground Two)(a)) and that Petitioner "was never advise[d] that a[n] upper virance [sic] would be imposed" (id.), the record conclusively shows otherwise, as:

A) Petitioner's Plea Agreement expressly states that (i) Petitioner "understands" that, absent application of the enhanced penalty provisions of Section 924(e), "the maximum term of imprisonment provided by law for the Indictment herein is not more than ten years" (Docket Entry 22 at 1-2), (ii) Petitioner "further understands that the sentence to be imposed upon him is within the discretion of the sentencing Court subject to the statutory maximum," as well as that "[t]he sentencing Court is not bound by the sentencing range prescribed by the United States Sentencing Guidelines," but "will consider that range as well as other relevant factors set forth in the Guidelines and those factors set

9

forth in Title 18, United States Code, Section 3553(a) before imposing sentence" (id. at 3), (iii) Petitioner "further understood that the United States and [Petitioner] reserve[d] the right to bring to the Court's attention any facts deemed relevant for purposes of sentencing" (id. at 6), and (iv) "[n]o agreements, representations, or understandings have been made between the parties in this case other than those which are explicitly set forth in this Plea Agreement, and none will be entered into unless executed in writing and signed by all the parties" (id. at 7; see also id. (bearing signatures of both Petitioner and his counsel));

B) during his plea hearing, Petitioner swore (see Docket Entry 40 at 3 (memorializing his oath and appreciation of its implications)) that (i) he could "read and understand . . . the [P]lea [A]greement" (id.; see also id. at 4-6 (documenting his confirmation that he signed Plea Agreement and his reiteration that he "underst[oo]d all the terms of th[e P]lea [A]greement")), (ii) he "had enough time to review the [P]lea [A]greement and discuss it with [his counsel]" (id. at 5; see also id. at 4 (affirming he was "fully satisfied with the services of [his] attorney and his counsel, representation, and advice")), (iii) "th[e P]lea [A]greement represent[ed] the entire agreement between [Petitioner] and the United States" (id. at 6), (iv) no one "made any . . . promises to [him] other than those contained in the [P]lea [A]greement in an effort to get [him] to plead guilty" (id.

10

at 7), (v) he understood that, if the Court found Section 924(e) inapplicable, he faced "[a] term of imprisonment of not more than 10 years" (id. at 9), (vi) he understood that "[i]t will ultimately be up to th[e] Court to determine a sentence which is sufficient but not greater than necessary," after first "calculating an advisory sentencing guideline range" (id. at 10), (vii) he "underst[oo]d that [his] . . . sentence may be different from any estimate [his counsel] may have provided" (id. at 11), (viii) he "underst[oo]d that this Court can use a guideline range or impose a sentence that is more severe than that estimated to [him] by [his] attorney" (id.), (ix) he understood that the Court must "consider that advisory guideline range . . . and then all the other factors set out in [] Section 3553" (id.), and (x) he understood that "this Court has the authority to impose a sentence that is more severe than that called for by the applicable advisory sentencing guideline range" (id.; see also id. at 11-12 (reflecting Petitioner's understanding that imposition of sentence "more severe than that called for by the guidelines . . . [wa]s not a reason [that] would allow [him] to withdraw this guilty plea")); and

C) at Petitioner's sentencing hearing, after ruling that the enhanced penalties under Section 924(e) did not apply, the Court (per Judge Osteen) (i) expressly explained that, because Petitioner "factually . . . is an armed career criminal, . . . [he should] prepare for the possibility that the Court will vary upward

11

substantially in fashioning a sentence" (Docket Entry 42 at 7-8), (ii) invited comment from both sides "as to what constitutes a sentence that is sufficient but not greater than necessary taking into consideration the advisory guideline calculation as well as other factors set forth under [] Section 3553" (id. at 8), (iii) listened to arguments in mitigation and aggravation under Section 3553(a), including directly from Petitioner (see id. at 8-13), (iv) gave a detailed outline of the grounds for and manner/extent of variance upward under consideration before soliciting (and hearing) further argument from both sides (see id. at 13-19), and (v) ultimately "f[ou]nd that a variance upward from the otherwise applicable guideline range of 57-71 months to a sentence of 96 months constitutes a sentence that is sufficient but not greater than necessary" (id. at 19-20; see also id. at 20 ("I am varying because, as indicated earlier, the criminal history [category], while properly calculated, fails to fully reflect the dangerousness and the need to deter this type of conduct for individual defendants who have the same record and under similar circumstances as the ones presented here.")).

In other words, contrary to the conclusory allegations of Ground Two, (A) Petitioner signed a Plea Agreement (i) making clear that the Court could impose a sentence above his advisory guideline range (up to a maximum of 120 months in prison) based on factors set out in Section 3553(a) and (ii) denying that he received any

12

conflicting promise from anyone regarding his sentencing exposure, (B) Petitioner (i) admitted under oath (at the time of his guilty plea) that he understood those aspects of his Plea Agreement (after sufficient discussion with his counsel with whom Petitioner remained fully satisfied) and then (ii) reiterated (again under oath) his understanding of the sentencing process (including specifically the possibility of an upward variance from the advisory guideline range) and his denial of any assurance otherwise, and (C) Petitioner (i) heard the Court (per Judge Osteen) express an inclination to vary upward substantially from Petitioner's advisory guideline range of 57 to 71 months in prison (prior to the presentation of arguments about a proper sentence), as well as his counsel's subsequent pleas for leniency, and (ii) took the opportunity to address the Court directly, but neither recanted his prior sworn statements acknowledging that he faced imprisonment for up to 120 months (regardless of his advisory guideline range) and denying any guarantee from anyone (including his counsel) of a prison sentence from 57 to 71 months nor identified any challenge he wished to make to an upward variance which his counsel would not present.

"[I]n the absence of extraordinary circumstances, . . . [the C]ourt should, without holding an evidentiary hearing, dismiss [the Section] 2255 motion [because it] necessarily relies on allegations that contradict [Petitioner's] sworn statements." United States v.

13

Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). Petitioner has not shown any such extraordinary circumstances. (See Docket Entry 46, ¶ 12(Ground Two)(a); Docket Entry 54-1; Docket Entry 55.) Ground Two thus lacks merit and only Petitioner's claim in Ground One for failure to file a notice of appeal warrants relief.

**IT IS THEREFORE RECOMMENDED** that the Section 2255 Motion (Docket Entry 46) be denied without issuance of certificate of appealability, except for the failure-to-appeal claim in Ground One, which the Court should grant by vacating and then re-entering Petitioner's Judgment to give him another opportunity to pursue a timely appeal (with the assistance of new appointed[2] counsel).

                                    /s/ L. Patrick Auld
                               **L. Patrick Auld**
                         **United States Magistrate Judge**
February 1, 2022

---

[2] Although Petitioner proceeded with retained counsel before this Court (see Docket Entry 4), the Fourth Circuit more recently deemed him eligible for appointment of counsel (see Docket Entry 37). Given that circumstance, as well as the information in the Presentence Report regarding Petitioner's limited means (see Docket Entry 27, ¶ 51), which his incarceration in the interim likely would not have improved, the Court should appoint counsel to ensure the timely filing of a notice of appeal upon re-entry of judgment.

14